## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lisa A. Crandall, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent with the Federal Bureau of Investigations ("FBI") since June 2010. I am currently assigned to the Lakeville Resident Agency within the Boston Division of the FBI. My current responsibilities include the investigation of various violations of federal law, particularly, the investigation of federal crimes involving the sexual exploitation of children utilizing computer telecommunications. I am familiar with various violations of federal law pertaining to the sexual exploitation of children, including, but not limited to, violations of 18 U.S.C. § 2251(a). I am currently investigating DOMENIQUE DEQUON HINES ("Hines") for federal crimes in violation of 18 U.S.C. § 2251(a) (Production/Attempted Production of Child Pornography).

2. I make this affidavit in support of an application for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. to disclose to the government records and other information, including the contents of communications, associated with the following: a) the Apple ID Minor A @icloud.com; and, b) the Apple ID associated with telephone number and/or subscriber (xxx) xxx-3688, Domenique DeQuon Hines, (collectively, the "Target Accounts"), that are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA.

3. The statements contained in this affidavit are based in part on information provided by FBI Special Agents and other law enforcement officials; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents;

information gathered from the service of subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI agents/analysts and computer forensic professionals; and my experience, training, and background as a Special Agent with the FBI. Because this affidavit is submitted for the limited purpose of securing authorization for the requested search warrants, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the sufficient probable cause for the requested warrants.

4. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2251(a), as described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

5. On Friday November 6, 2020, a local police department ("PD") notified FBI Boston, Lakeville Resident Agency, that it had received information from parents of a fourteen-year-old minor female (hereinafter, "Minor A"). The parents believed their minor daughter had been communicating via text messages with a 23-year-old male party and the two exchanged text messages that contained sexually explicit photos and sexually explicit conversations. The parents provided the phone number used by the male party as (xxx) xxx-3688. The parents of Minor A came to the police department and provided police with a USB drive containing messages exchanged between Minor A and the adult male, which the parents had retrieved from their family iCloud account.[1] Based on a review of the messages, the PD did not believe that the adult male resided in its jurisdiction or within the Commonwealth of Massachusetts and contacted the FBI.

---

[1] iCloud is a cloud storage and cloud computing service offered by Apple Inc.

2

### Overview/iMessages/communications pulled from family's iCloud account/ forensic interview of Minor A

6. The investigation revealed that Hines and Minor A initially met and conversed on Instagram.[2] Thereafter, Hines asked for Minor A's telephone number. The two exchanged phone numbers and began communicating via iMessages. It also appears that Hines created a joint Instagram account for Hines and Minor A and that the two attempted to communicate at other times via Instagram. A review of the iMessages revealed that Hines provided his month and date of birth to Minor A and informed Minor A that he is 23 years old and Minor A ultimately confirmed that she is 14 years old. Via iMessage, Hines sent a profile picture of himself to Minor A and Minor A sent a profile picture of herself to Hines.[3] Thereafter, at Hines' request, Minor A took sexually explicit photos of herself, including a close-up photograph of her vagina, and sent them to Hines, by iMessaging the photos to phone number (xxx) xxx-3688. At Hines' request, Minor A also took other naked photos and videos of herself and sent them to Hines at that same phone number.

7. An interview of Minor A was conducted on November 23, 2020. During the interview, Minor A identified Hines by his name, DeQuon Hines, and also identified Hines' number as being saved on her iPhone under the contact name "Daddy." Within Minor A's iPhone,

---

[2] Instagram is a free photo and video sharing social networking service application available on iPhone and Android where people can upload photographs or videos and share them with their followers or with a select group of friends. It launched in October 2010.

[3] Authorities have confirmed that the photograph of Hines that he sent to Minor A is the same individual depicted in photograph(s) maintained by the Illinois Sexual Offender Registry for Hines.

3

the phone number (xxx) xxx-3688 is saved under the name "Daddy" (surrounded by two emoji's on each side, including one heart on each side).[4]

8.  During the interview, Minor A was also shown a copy of various naked photographs of Minor A, including a close up photograph of her vagina with the bottom of her sweatshirt visible above her vagina, as well as screenshots of naked videos, and Minor A confirmed each depicted her and that she took them and sent them to Hines at his request.

9.  As part of the investigation, I have reviewed the iMessages provided by Minor A's parents, which begin on October 28, 2020 at approximately 10:20am and end on November 6, 2020. On October 28, 2020, Hines sends a picture of an adult male's face to Minor A. In response, Minor A asks Hines how he found her "insta acc???"[5] Hines then asks Minor A the following: "Can I be your daddy?" Minor A accepts and states that she previously lied about being 15 years old and states that she is only 14.[6] Hines replies by iMessaging the following: "Okay and you're fine with me being 23?" Minor A states that she does not really care about age differences but that she was more worried about Hines being okay with her being 14. Hines then states, "It's not the age it's the person behind the age. I like who you are. Yes the age makes me more hesitant but".

---

[4] Based on the information that follows, there is probable cause to believe that the user of the phone number (xxx) xxx-3688 is Hines, including that Minor A saved that number in the contacts section of her iPhone. For ease of reference, the undersigned will refer to that user as Hines herein.

[5] Based on my training and experience, I believe that Minor A was referring to her Instagram account. Further, during an interview with Minor A on November 23, 2020, Minor A was shown a copy of this photograph and confirmed that photograph depicted Hines.

[6] During an interview on November 23, 2020, Minor A related that she may have told Hines she was 16 years old, and thereafter told him she was 15 and then told him that she was 14.

4

10.     On that same day, Hines asks Minor A if both of Minor A's parents work. Minor A states that her mom does not, to which Hines replies, "Then I'd have to pick you up and take you back to the hotel." Minor A responds, "Yea I guess so," to which Hines states, "You'd be okay with that?" Hines later tell her, "Send me more pictures of you." The two talk more before Hines asks, "You really want me to come see you?" Hines also asks Minor A where in Massachusetts she lives.[7]

11.     During iMessage exchanges between the two on October 29, 2020, Hines asks Minor A the following: "how come you never call me daddy?." Minor A responds that she is shy but that she will call him that more often. Another iMessage from Hines to Minor A on that day reads as follows: "Is it bad I've been thinking about what you look like doing the splits naked?"

12.     In another iMessage after 11:31 pm that day, Hines indicates he wants to "ft", which, based on my training and experience, believe to be Facetime, with Minor A.[8] Minor A states that she could not because her mom was sleeping in the next room and she was supposed to be sleeping. The two continue communicating via iMessage and Hines talks about needing to be there (Massachusetts) now and sneaking her (Minor A) out. Minor A states that she would be fine with that and Hines asks, "but aren't you nervous to meet me?"

13.     On October 30, 2020, Hines sends an iMessage to Minor A and tells her that she could have anyone. Minor A tells Hines that she wants him. Hines states, "why though" and "But I'm old." Hines asks for a picture of Minor A and tells her "You're so cute lol" and "I like to look at your face." Hines talks about getting married and tells her that once she is 16 they don't have

---

[7] In messages on November 1, 2020, Hines asks Minor A for her address and she provides it.
[8] Facetime is a video and audio chat product developed by Apple Inc., which allows users to communicate with one another through video or audio calls.

to hide their relationship "because that's the age of sexual consent in your state." Hines later states, "Good baby I want you to touch yourself where no one can see." Hines also asks for a picture of Minor A's "kitten parts." Minor A asks if she can send it over Snap so it won't stay in the chat.[9] Hines states that he wants to look at the picture while he plays with himself. Minor A then sends Hines a close-up photograph of a pubescent female's vagina with the legs spread apart, and the bottom portion of a sweatshirt, located above the vagina, is observed in the picture.[10] The female's face is not visible in that picture. Hines responds, "You have the prettiest kitten parts daddy has ever seen." During an interview with Minor A on November 23, 2020, Minor A was shown this photograph and confirmed that she took that photograph of her vagina and sent it to Hines at Hines' request. Minor A also confirmed that a portion of a sweatshirt that is visible in this photograph was Minor A's sweatshirt.

---

[9] Based on my training and experience, I believe that "Snap" is a shorthand term for Snapchat. Snapchat is a multimedia messaging app. One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they become inaccessible to their recipient.

[10] To avoid unnecessary in-person interaction given the health concerns posed by the current COVID-19 pandemic, I am not providing a copy of this image to the Court. I am aware that the "preferred practice" in the First Circuit is that a Magistrate Judge view an image that agents believe constitutes child pornography by virtue of its depiction of the lascivious exhibition of a child's genitals. United States v. Brunette, 256 F.3d 14, 18-19 (1st Cir. 2001). Here, however, the description offered "conveys to the Magistrate Judge more than [my] mere opinion that the images constitute child pornography." United States v. Burdulis, 753 F. 3d 255, 261 (1st Cir. 2014) (distinguishing Brunette). Additionally, 14 year old Minor A has confirmed that she is the individual depicted in the images that depict her genitals. See United States v. Syphers, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added). Therefore, the Court need not view the image described herein to find that it depicts child pornography.

14.     Additionally, using iMessage, at some point during the time period outlined above, Hines sends Minor A pictures of an erect male's penis and requests that she produce and send him other images and videos of herself. These images and videos of Minor A are produced by Minor A and sent to Hines upon Hines' request. Some include photos or videos depicting Minor A undressing, in the shower, or full frontal naked depiction of Minor A. For example, on October 31, 2020, Minor A also took photographs of herself using her iPhone and sent them to Hines. On that date, via iMessages, Hines tells Minor A that he wants to see her naked and specifically that he wants to see her full body with her face. Minor A complied and took a full frontal body photograph of herself standing in front of a mirror exposing her vagina and sent it to Hines. After an image is produced, Hines requests another by asking Minor A via iMessage the following: "Can you turn around bend over for daddy?" Minor A complied by taking a photograph of herself naked and turned around with her back facing the camera and is bent over exposing her vagina, buttocks and anus. She then texted that photograph to Hines at Hines' request. Both photographs were shown to Minor A during the November 23, 2020, interview and Minor A confirmed both depicted her and that she took them and sent them to Hines at his request.

15.     During iMessage communication with Minor A, Hines tells Minor A that if her parents ever try to take her phone, then she should immediately delete all of their texts. Hines also tells Minor A that he is falling for her, that he loves her, that he does not want her to talk to anyone else online that she does not know in person, and to "Do exactly what you are told."

16.     In the course of the iMessaging with Minor A, Hines asks Minor A how often she plays with her kitten parts and tells her that he does not think he will fit inside her. Hines states that sex hurts the first time and that he will be gentle the first time.

**Review of Minor A's iPhone 8**

7

17. On November 17, 2020, FBI initiated a forensic review of Minor A's iPhone 8 ("iPhone") and found that the Apple ID associated with Minor A's iPhone was [Minor A]@icloud.com and the IMEI number assigned to the phone was 356117091031577. Further, the telephone number (XXX) XXX-3688 was saved in Minor A's iPhone as "Daddy" surrounded by two emojis on both sides, including two heart emojis with one on either side.

18. A review of Minor A's iPhone revealed that iMessages were exchanged between Minor A and Hines from October 28, 2020, at approximately 10:27:47 am to November 6, 2020, at approximately 8:04:51 pm.

19. The iMessages log located within Minor A's iPhone contained the majority of the iMessages previously provided by the parents of Minor A which they obtained from the family's iCloud account. However, the iMessage communication log did not contain all of the attachments that were previously provided to PD by Minor A's parents. For example, images that were documented as having been sent to Hines from Minor A and dated October 30, 2020 and October 31, 2020, which were recovered from the family's iCloud account, and which appeared to contain at least one image of child pornography of Minor A, were not attached to the iMessage communication log. Based on my training and experience and based on information provided by others, I believe that these attachments were deleted from the iMessage log on Minor A's iPhone.[11] However, these images were located within Minor A's iPhone and are time-stamped with creation dates that are consistent with the timeframes of the iMessage chats between Hines and Minor A, where Hines, as user (XXX) XXX-3688, requested those same images from Minor A.

---

[11] During the interview on November 23, 2020, Minor A related that she had deleted some of the attachments.

8

20. For example, on October 30, 2020, at approximately 10:48am EST, (xxx) xxx-3688 requests a photo of Minor A "kitten parts." It appears that a photo is sent from Minor A to the user of (xxx) xxx-3688, as (xxx) xxx-3688 states, "You have the prettiest kitten parts daddy has ever seen" at approximately 10:59am on that date. A close-up image of a female's genitalia, matching the same image that was contained within the iMessage communications pulled from the family's cloud account, and described in paragraph 12 above, was located within the iPhone8. The images had a creation date and time of October 30, 2020 at 10:56am.

21. Two other images that are described in paragraph 14 above, namely, a full frontal body photograph of Minor A standing in front of a mirror exposing her vagina, and a photograph of Minor A naked and turned around with her back facing the camera and is bent over exposing her vagina, buttocks and anus were located on Minor A's iPhone. Examination of Minor A's iPhone determined that these images had a creation date and time of October 31, 2020 at 6:56 pm and 6:59 pm, respectively.

22. A review of Minor A's iPhone also revealed that between October 28, 2020 and November 6, 2020, there were approximately 30 voice and video calls exchanged between Minor A and Hines and further, that Hines initiated all but two. There were also four missed calls from Hines on November 6, 2020, between 8:02pm EST and 8:31pm EST.

### Identification of Hines/Hines' Criminal History

23. On November 6, 2020, a subpoena was served on Verizon Wireless requesting subscriber information for telephone number (xxx) xxx-3688. Information received from Verizon Wireless identified the following:

    Name: Domenique Hines
    Tel No: (xxx) xxx-3688

9

Address: 804 Eletson Drive, Crystal Lake, IL[12]

24. Open source database checks further identified an individual named Domenique DeQuon Hines, date of birth xx/xx/1997, SSN xxx-xx-1760, associated with a different address in Crystal Lake, Illinois.

25. I have reviewed the criminal record for the Domenique DeQuon Hines with those identifiers, as well as a certified copy of the docket sheet for case number 17CF001310, which show(s) that he has been convicted of a felony of Child Pornography/Solicitation of a Child on or about June 8, 2018 out of McHenry County Clerk of the Circuit Court, Woodstock Illinois. Hines was sentenced to four years imprisonment in that case. I have received information from the Illinois State Correctional Records Department that Hines was released on parole in that case on or about September 20, 2019 and that Hines completed his term of parole on or about September 21, 2020. A photograph of Hines was also obtained from the Crystal Lakes Police Department Sex Offender Registry. The individual depicted in the photograph appears to be the same individual depicted in three images sent via iMessage by the user of (xxx) xxx-3688 to Minor A.

## Preservation Requests

26. On November 12, 2020, a preservation request was served to Apple for accounts associated with phone number (xxx) xxx -7772, belonging to Minor A, and (xxx) xxx-3688, belonging to Hines. This request was assigned internal reference number 20385823.

---

[12] Additionally, the investigation determined that sometime during the time period of September 2020 to the present, Hines provided this address, including an apartment number, to local authorities in Illinois.

27. On November 17, 2020, a preservation request was served to Apple for the account with Apple ID Minor A @icloud.com. This requested was assigned internal reference number 20386207.

## TECHNICAL BACKGROUND[13]

28. Apple is a United States company that produces the iPhone and iPad, which use the iOS operating system, and desktop and laptop computers, which use the Mac OS operating system.

29. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

  a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

  b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

  c. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to manage iOS device backups and data associated with third-party apps. If a user signs up for iCloud, iCloud automatically backs up information on the user's mobile devices, such as an iPhone or iPad, daily over wifi (when the device is turned on, connected to a power supply, and locked ), unless the user manually changes the settings to prevent automatic backups. The backup includes,

---

[13] The information in this section is based on information published by Apple on its website.

among other things, purchase history from the iTunes store and App Store, photos and videos, device settings, app data, iMessage, text messages, visual voicemail password, and device settings. The backup includes data that is not already otherwise stored in iCloud. Generally, iCloud Photo already stores photographs and videos in iCloud, so these items thus would not be included in the backup.

        d.    iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

30. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

31. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often

ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

32. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

33. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

34. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

35. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, text messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging

service, can be configured to regularly back up a user's instant messages on iCloud. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

36. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

37. Based on my training and experience and in communication with other law enforcement officials who investigate violation of federal law outlined herein, it is my understanding that evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. The evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation, including information that can be used to identify the account's user or users.

15

## LEGAL AUTHORITY

39. The government may obtain both electronic communications and subscriber information from a provider of electronic communication services and remote computing services by obtaining a search warrant. 18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

40. Any court with jurisdiction over the offense under investigation may issue a search warrant under 18 U.S.C. § 2703(a), regardless of the location of the provider whose information will be searched. 18 U.S.C. § 2703(b)(1)(A). Furthermore, unlike other search warrants, § 2703 warrants do not require an officer to be present for service or execution of the search warrant. 18 U.S.C. § 2703(g). If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber. 18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

## REQUEST TO SEAL AND PRECLUDE NOTICE TO THE SUBSCRIBER(S)

41. I request that this application, the warrant, the order, and any related papers be sealed by the Court until such time as the Court pursuant to Local Rule 7.2 directs otherwise.

42. I further request that, pursuant to 18 U.S.C. §§ 2705(b) and 2703(b)(1)(A), the Court order Apple not to notify any person (including the subscribers or customers to which the materials relate) of the existence of this application, the warrant, the Order, or the execution of the warrant, for a period of one year from the date of this Order, or until notified by the government within thirty days of the conclusion of the investigation, whichever is earlier. Apple may disclose this Order to an attorney for Apple for the purposes of receiving legal advice.

43. Non-disclosure is appropriate in this case because the Court's order relates to an ongoing criminal investigation that is neither public nor known to the target of the investigation, and its disclosure may alert the target to the existence of the investigation. There is accordingly

16

reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by: giving the target an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, or intimidate potential witnesses. See 18 U.S.C. § 2705(b).

## FOURTEEN-DAY RULE FOR EXECUTION OF WARRANT

44. Federal Rules of Criminal Procedure 41(e)(2)(A) and (B) direct the United States to execute a search warrant for electronic evidence within fourteen (14) days of the warrant's issuance. If the Court issues this warrant, the United States will execute them not by entering the premises of Apple, as with a conventional warrant, but rather by serving a copy of the warrant on the respective companies and awaiting their production of the requested data. This practice is approved in 18 U.S.C. § 2703(g),[14] and it is generally a prudent one because it minimizes the government's intrusion onto internet companies' physical premises and the resulting disruption of their business practices.

45. Based on my training and experience and that of other law enforcement agents I have consulted, I understand that electronic account providers sometimes produce data in response to a search warrant outside the 14-day (formerly 10-day) period set forth in Rule 41 for execution of a warrant. I also understand that electronic account providers sometimes produce data that was created or received after this 14-day deadline ("late-created data").

---

[14] Section 2703(g) provides that "[n]otwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service."

17

46.     The United States does not ask for this extra data or participate in its production.

47.     Should Apple produce late-created data in response to this warrant, I request permission to view all late-created data that was created by Apple, including subscriber, IP address, logging, and other transactional data, without a further order of the Court. This information could also be obtained by grand jury subpoena or an order under 18 U.S.C. § 2703(d), neither of which contains a 14-day time limit. However, law enforcement personnel will seek to avoid reviewing any late-created data that was created by or received by the account-holder(s), such as messages, absent a follow-up warrant.

48.     For these reasons, I request that the Court approve the procedures in Attachment B, which set forth these limitations.

## CONCLUSION

49. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems outlined herein, that is in the control of Apple, there exists evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a) (Production/Attempted Production of Child Pornography), as described in Attachments A and B.

Respectfully submitted,

*Lisa A. Crandall*
Lisa A. Crandall
FBI Special Agent

Subscribed and sworn to me telephonically in accordance with Fed. R. Crim. P.4.1 on December 1, 2020.

6:23 p.m.

HONORABLE DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE